Celeste **SPICER**, Autumn **Burgess**, Amy **Ledin**, Joseph **Russo**, Esther **Martinez**, Lysette **Roman**, and Serena Siying **Hui**, on behalf of themselves and others similarly situated, Plaintiffs,

v.

**PIER SIXTY LLC, and James Kirsch, Defendants.**

No. 08 Civ. 10240(LBS).

United States District Court, S.D. New York.

July 27, 2010.

Order Denying Certification Sept. 14, 2010.

Order Denying Reconsideration Oct. 13, 2010.

---

Charles Edward Joseph, Daniel Maimon Kirschenbaum, Denise Andrea Schulman, Joseph and Herzfeld, New York, NY, for Plaintiffs.

Carolyn Diane Richmond, Eli Zev Freedberg, Seth M. Kaplan, Fox Rothschild LLP, Felice Barbara Ekelman, Michael Alan Jakowsky, Jackson Lewis LLP, White Plains, NY, for Defendant.

## MEMORANDUM & ORDER

LEONARD B. SAND, District Judge.

Before the Court are Plaintiffs' motion for class/collective action certification and Defendants' motion for summary judgment. For the following reasons, Defendants' motion for summary judgment is granted in part, denied in part, and Plaintiff's motion for certification is granted for those claims that have survived summary judgment.

### I. Background

Defendants own and operate two private event spaces, Pier Sixty and the Lighthouse, both located in the Chelsea Piers sports and entertainment complex in Manhattan. Various corporate, charitable, and social events are held there. Typically, the client booking the event pays the entire cost of the event in advance, and the guests in attendance do not pay a fee to Pier Sixty. The charge to the client consists of a negotiated fee for the event, a mandatory "service charge," amounting to 20–22% of the negotiated fee, and any applicable taxes. 12.25% of the service charge is distributed to the banquet servers who work the event, and 9.75% of the service charge is used to cover personnel, administrative, and other costs associated with the event.[1]

---

1. These percentages have undergone some minor fluctuation over the past eight years.

Defendants' sales managers work with potential clients to schedule events and negotiate event contracts. Over the past eight years,[2] Defendants have used three form contracts. These form contracts described the service charge differently, although the actual distribution of the service charge remained essentially the same. Prior to April 2008, the first form contract stated that "22% of food and beverage sales will be added to your bill." (Def.'s 56.1 Ex. C ("Form Contract One").) Defendants imposed a sales tax on the service charge. In response to *Samiento v. World Yacht,* 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990 (2008), discussed *infra,* Defendants amended the contract to read

> "12.25% of the food and beverage cost will be added to your account as a gratuity. This amount is fully distributed to servers, captains, and/or bartenders that are assigned to and work your event. 9.75% of the food and beverage cost (which is subject to all applicable sales taxes) will be added to your account as a service charge. This is not a gratuity and serves to offset ancillary expenses associated with the event."

(Giordano Aff. Supp. Summ. J. Ex. E ("Form Contract Two").) At this point, Defendants ceased charging sales tax on the portion of the service charge distributed to the servers. This change in tax treatment confused some clients, and Defendants amended their form contract again to clarify the issue around August 2008. The contract was amended to read, "All food and beverage items are subject to a 22% service charge. The service charge is not a gratuity and is used to cover personnel, administrative or other costs. An 8.375% New York state sales tax applies to all charges." (Giordano Aff. Supp. Summ. J. Ex. F ("Form Contract Three").) Pier Sixty continues to use Form Contract Three.

Sales managers "rarely" had to provide an explanation of what the service charge covers. (Def.'s 56.1 ¶ 25.) When asked, sales managers provided varying descriptions of the service charge. One sales manager told a client that the charge per person would be $190 "plus tax and gratuity." (Schulman Ex. 21 ("E-mails"), PSL 5280.) Sales managers occasionally told clients that the service charge "covers all the waitstaff, bartenders, coatcheck, etc," (E-mails, PSL 5633) or that the gratuity was "included in" the service charge. When clients referred to the service charge as "the gratuity," sales managers sometimes would not correct them because they did not want to confuse the client. (*See* Schulman Aff. Opp. Summ. J. Ex. 15, 82:18–83:3.)

Defendants usually post "no-tipping" signs at the events, which explain that the gratuity has already been provided by the event's host. Banquet servers are instructed to refuse a tip from an event guest three times before accepting it. However, clients sometimes provide the banquet manager a gratuity in addition to the service charge, a practice which Defendants tell the client is allowed but not expected.

Plaintiffs are currently employed as part-time banquet servers at Pier Sixty, and typically earn a total of $23–26 per hour. According to Defendants, this total hourly rate is comprised of several components. First, Plaintiffs' "standard hourly rate" is $3.75 for the first forty hours per week, and $5.63 for additional hours. Defendants maintain that they are not required by law to pay the servers overtime compensation, and hence refer to the additional pay for overtime hours as voluntary "add pay." Second, the bulk of Plaintiffs' compensation comes from 12.25% of the service charge for each event, which is distributed to banquet servers according to a formula based on the number of hours worked and the employee's position. Third, Defendants guarantee full and part-time servers a minimum total hourly rate of $19–20 in the event that their share of the service charge is too low to compensate them at that hourly rate. Accordingly, Plaintiffs' compensation is comprised of (1) the standard hourly rate and any applicable add pay, (2) commission payments, and (3) guarantee payments

---

**2.** The applicable statute of limitations period is six years prior to the Plaintiffs' filing of the instant action, which runs from November 25, 2002 to the present (hereafter "relevant time period").

when necessary to cover any shortfall below the guaranteed minimum of $19–20 per hour.

Plaintiffs bring this action on behalf of themselves and other similarly situated individuals under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and New York Labor Law ("NYLL"), N.Y. LAB. LAW § 196–d (McKinney 2010). Plaintiffs maintain that Defendants violated the NYLL by withholding the 9.75% portion of the service charge used for administrative expenses from them, and violated the FLSA by failing to pay them overtime compensation equal to one and one-half times their guaranteed minimum of $19–20 per hour. Plaintiffs move for conditional certification of an opt-in collective action for the FLSA claims and certification of an opt-out class action under Federal Rule of Civil Procedure 23 for the NYLL claims. Defendants move for summary judgment on all claims. For the following reasons, Defendants' motion for summary judgment is granted in part, denied in part, and Plaintiffs' motion for certification is granted for those claims that have survived summary judgment.

## II. Motion for Summary Judgment

### a. Standard of Review

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A material fact is one that might affect the outcome of a suit under governing law. *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir.2003). A "genuine" issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### b. Retroactive Application of *World Yacht*

Prior to 2008, the New York Court of Appeals had not addressed the question of whether a mandatory service charge could be considered a gratuity under the NYLL.

NYLL § 196–d provides that "no employer ... shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." NYLL § 196–d. However, several interpretations of the phrase "any charge purported to be a gratuity" had been given prior to 2008.

In 1995, The New York State Department of Labor ("NYDOL") issued an Inter–Office Memorandum setting forth its policy that service charges would not be considered gratuities under § 196–d. In 2002, the Appellate Division ruled that mandatory service charges could not be considered gratuities under the statute as a matter of law because they are involuntary, but the Court of Appeals modified the judgment on other grounds and expressly reserved decision on the question of § 196–d's application to mandatory service charges. *Bynog v. Cipriani Group*, 298 A.D.2d 164, 748 N.Y.S.2d 9 (N.Y.App.Div.2002), *aff'd as mod.*, 1 N.Y.3d 193, 770 N.Y.S.2d 692, 802 N.E.2d 1090 (2003). In 2007, the United States District Court for the Southern District of New York followed the Appellate Division in *Bynog* and concluded that mandatory service charges could not be gratuities under § 196–d. *Lu v. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 706, 710 (S.D.N.Y.2007).

In *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990 (2008), the New York Court of Appeals first considered whether mandatory service charges could be encompassed by the statutory term "any charge purported to be a gratuity." NYLL § 196–d (McKinney 2010). "Given the 'remedial nature' " of the NYLL, the Court of Appeals reasoned that "such language should be liberally construed in favor of the employees." *World Yacht*, 854 N.Y.S.2d 83, 883 N.E.2d at 994. The Court of Appeals held that "the statutory language of Labor Law § 196–d can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Id.* at 994–96. Under the *World Yacht* standard, whether "a mandatory charge or fee is purported to be a

gratuity" is "weighed against the expectation of the reasonable customer." *Id.* at 994–96.

■ On June 8, 2010, the Supreme Court of the State of New York, Appellate Division, held that the *World Yacht* standard was not a "new legal principle" for the purposes of retroactivity analysis, and thus applies to claims based on events that occurred before *World Yacht* was decided. *Ramirez v. Mansions Catering, Inc.,* 74 A.D.3d 490, 492, 905 N.Y.S.2d 148, 150 (2010). Under New York law, while claims are usually decided based on the law existing at the time of decision, a "new rule" need not necessarily be applied retroactively. *People v. Favor,* 82 N.Y.2d 254, 262, 604 N.Y.S.2d 494, 624 N.E.2d 631 (1993). However, if a decision is not a "new rule," it will automatically apply to claims based on events that occurred before the decision was rendered. *Id.* The Appellate Division noted that "a judicial decision announces a 'new rule' where it 'overrul[es] established precedent' or constitutes 'such a sharp break in the continuity of law' or 'a dramatic shift away from customary and established procedure' that its 'impact will wreak more havoc in society than society's interest in stability will tolerate.' " *Ramirez,* 74 A.D.3d at 492, 905 N.Y.S.2d at 150 (*quoting Favor,* 82 N.Y.2d at 262, 604 N.Y.S.2d 494, 624 N.E.2d 631) (alterations in original). In support of its holding that *World Yacht* was not a "new rule," the Appellate Division cited the Court of Appeals' statement in *Gurnee v. Aetna Life & Cas. Co.,* 55 N.Y.2d 184, 192, 448 N.Y.S.2d 145, 433 N.E.2d 128 (1982), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 79 (1982), that "[a] judicial decision construing the words of a statute ... does not constitute the creation of a new legal principle." *Id.*

The Appellate Division further argued that "[b]ecause there was no existing body of established precedent on the issue, *World Yacht* was not a departure from existing law and thus not a 'new rule' subject to retroactivity analysis." *Ramirez,* 74 A.D.3d at 492, 905 N.Y.S.2d at 150. According to the Appel-

late Division, the "the only pre-*World Yacht* appellate decision construing Section 196–d's 'gratuity' provisions was our decision in *Bynog,*" but the Court of Appeals modified that judgment on other grounds and expressly reserved decision as to whether mandatory services charges could be considered gratuities under the statute. *Ramirez,* 74 A.D.3d at 492, 905 N.Y.S.2d at 150.

■ Retroactivity is a question of New York state law. *American Trucking Associations, Inc. v. Smith,* 496 U.S. 167, 177, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) ("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."). When a question of state law has only been addressed by an intermediate state court and has not yet been addressed by the state's highest court, as is the case in *Ramirez,* a federal court sitting in diversity is "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad,* 595 F.3d 426, 432 (2d Cir.2010) (*citing Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 134 (2d Cir.1999)).

■ Defendants have not presented us with persuasive evidence that the Court of Appeals would reverse *Ramirez.* *Ramirez* rests mainly on the proposition derived from the Court of Appeals' *Gurnee* case that a judicial construction of a statute cannot be a "new legal principle" subject to retroactivity analysis. *Gurnee,* 55 N.Y.2d at 192, 448 N.Y.S.2d 145, 433 N.E.2d 128. This proposition remains good law and has been cited many times by the Court of Appeals and New York's lower courts. *See, e.g., Pachter v. Bernard Hodes Group, Inc.,* 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279, 283 n. 3 (2008); *People v. Hill,* 85 N.Y.2d 256, 624 N.Y.S.2d 79, 648 N.E.2d 455, 458 (1995); *72A Realty Assocs. v. Lucas,* 902 N.Y.S.2d 791, 793 (N.Y.Civ.Ct.2010).[3]

---

**3.** *See also Favor,* 604 N.Y.S.2d 494, 624 N.E.2d at 636 ("Whatever criteria are used to define the concept of a 'new' rule of law, care must be taken to assure that it remains a relatively narrow one, lest the exception swallow up what has

always been considered the normal rule in legal methodology—i.e., that cases should be decided on the basis of the law as it exists at the time of decision.").

■ Defendants argue that the *Ramirez* court erred when it found that there was "no existing body of established precedent" on the issue of § 196–d's application to mandatory service charges at the time *World Yacht* was decided. Defendants first cite the New York Department of Labor's position in memoranda and opinion letters that § 196–d did not apply to mandatory service charges as prior conflicting authority. However, the *Gurnee* court also faced prior conflicting administrative decisions from the Insurance Department, which "had promulgated regulations based on a construction of [the statute] contrary to that subsequently articulated by this court." *Gurnee*, 55 N.Y.2d at 192, 448 N.Y.S.2d 145, 433 N.E.2d 128. This prior conflicting administrative authority did not prevent the *Gurnee* court from stating in the very next sentence that "a judicial decision construing the words of a statute, however, does not constitute the creation of a new legal principle." *Id.* Accordingly, as in *Gurnee*, prior administrative constructions of a statute contrary to that subsequently adopted by the New York Court of Appeals do not transform a judicial statutory construction into a "new legal principle." [4] *Id.*

■ Defendants next cite *Lu v. Jing Fong Restaurant, Inc.*, 503 F.Supp.2d 706, 710 (S.D.N.Y.2007), which concluded that § 196–d did not apply to mandatory service charges and opined that "this [was] not an open question under New York law." *Id.* However, "[f]ederal precedents are not binding [on a state court] in interpreting a[s]tate statute." *Hartnett v. New York City Transit Auth.*, 86 N.Y.2d 438, 447, 633 N.Y.S.2d 758, 657 N.E.2d 773 (1995). Thus, *Lu* did not contribute to any "existing body of established precedent" binding on New York courts prior to *World Yacht*.[5]

Lastly, Defendants claim that the Appellate Division's decision in *Bynog* was suffi-

cient to render *World Yacht* a change in decisional law. However, the continued validity of the Appellate Division's construction in *Bynog* was put into doubt by the Court of Appeals' explicit hesitance to endorse it, *see Bynog*, 1 N.Y.3d at 199 n. 4, 770 N.Y.S.2d 692, 802 N.E.2d 1090, and *Bynog* could not be called an "existing body of established precedent." *Ramirez*, 74 A.D.3d at 492, 905 N.Y.S.2d at 150.

Given *Gurnee*'s clear direction that a judicial construction of a statute is not a new legal principle for retroactivity purposes, Defendants have not presented "persuasive evidence" that the Court of Appeals would overturn *Ramirez*. *V.S.*, 595 F.3d at 432. As such, we are bound by the Appellate Division's decision, and must apply *World Yacht* to the NYLL claims before us.

### c. Merits of Summary Judgment Motion on NYLL Claims

■ Under the *World Yacht* standard, "[w]hether a charge 'purports to be a gratuity' is measured by whether a reasonable patron would understand that a service charge was being collected in lieu of a gratuity." *Krebs v. Canyon Club, Inc.*, 22 Misc.3d 1125, 880 N.Y.S.2d 873, 874 (N.Y.Sup.2009). While *World Yacht* is recent enough that little judicial elaboration on this standard has been provided, the NYDOL issued an opinion letter on March 11, 2010 that somewhat clarified *World Yacht*'s application to contractual language describing mandatory banquet service fees. (Schulman Dec. Opp. Summ. J. Ex. 36 ("March 11, 2010 NYDOL Letter").) In the letter, the NYDOL concluded that (1) the *World Yacht* standard must be applied by examining the totality of the circumstances, (2) if a contract does not describe the purpose of an 18–20% service fee, a reasonable customer would believe that the

---

4. While Defendants rely on a 1995 Inter–Office Memorandum setting out the policy that service charges would not be considered gratuities, the NYDOL apparently changed its position, and *World Yacht* relied on a 1999 NYDOL opinion letter for its "reasonable patron" standard. *World Yacht*, 854 N.Y.S.2d 83, 883 N.E.2d at 995 (citing an "opinion letter dated March 26, 1999").

5. Moreover, federal authority was not univocal as to the interpretation of § 196–d at the time *World Yacht* was decided. *See Chan v. Triple 8 Palace, Inc.*, 03 Civ. 6048(GEL), 2006 WL 851749, at *3 (S.D.N.Y. Mar. 30, 2006) (implying that the "customer's understanding of the payment" could be considered in determining whether a payment is a gratuity under New York and Federal law).

service fee was a gratuity, and (3) even if a contract explicitly states that a service fee is not a gratuity, a reasonable customer might nonetheless believe otherwise depending on the totality of the circumstances. (March 11, 2010 NYDOL Letter.)

 In *World Yacht,* the Court of Appeals stated that "the Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, 'if not irrational or unreasonable,' should be upheld." 854 N.Y.S.2d 83, 883 N.E.2d at 995 (*citing In re Chesterfield Assoc. v. New York State Dept. of Labor,* 4 N.Y.3d 597, 797 N.Y.S.2d 389, 830 N.E.2d 287 (2005); *In re Howard v. Wyman,* 28 N.Y.2d 434, 322 N.Y.S.2d 683, 271 N.E.2d 528 (1971)). However, in *Doo Nam Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 339 (S.D.N.Y.2005) (Sand, J.), we declined to rely on an NYDOL opinion letter, reasoning that "[w]hile courts defer to the governmental agency which administers the statute when the matter 'involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,' ... deference is not required when 'the question is one of pure legal interpretation of statutory terms.' " *Id.* (quoting *Kurcsics v. Merchants Mut. Ins. Co.,* 49 N.Y.2d 451, 426 N.Y.S.2d 454, 403 N.E.2d 159, 163 (1980); *Toys "R" Us v. Silva,* 89 N.Y.2d 411, 654 N.Y.S.2d 100, 676 N.E.2d 862, 866 (1996)).

 We rely on the March 11, 2010 NYDOL Letter because it is both reasonable and derived from an understanding of the "underlying operational practices" of the New York banquet industry. *Silva,* 654 N.Y.S.2d 100, 676 N.E.2d at 866. The letter bases its reasoning on an evaluation of inferences to be drawn from the contract drafting and customer relations practices in that industry. *Id.* Furthermore, it is neither irrational nor unreasonable to maintain that a reasonable customer's beliefs regarding the nature of a mandatory service fee would be influenced by the totality of the banquet company's representations and the surrounding circumstances. *World Yacht,* 854 N.Y.S.2d 83, 883 N.E.2d at 995.

Under the *World Yacht* standard as elaborated upon by the March 11, 2010 NYDOL Letter, there is a genuine issue of material fact for claims based on those events for which Form Contracts One and Three were used. "A court may grant summary judgment only when no rational jury could find in favor of the non-moving party." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998). Rational juries could come to differing conclusions as to what a reasonable customer would believe for those events.

 Form Contract One stated only that "22% of food and beverage sales will be added to your bill." (Form Contract One, at 4.) The March 11, 2010 NYDOL Letter questioned such unexplained service fees: "if the banquet operator added the service charge to the banquet contract and said nothing about its purpose ... a 'reasonable patron' would believe an 18% to 20% service charge is for the service staff." (March 11, 2010 NYDOL Letter 2.)

Form Contract Three is quite similar but states explicitly that the service charge is "not a gratuity." (Form Contract Three, at 4.) However, the March 11, 2010 NYDOL Letter explains that while such language is a "positive step toward ensuring that the reasonable patron would not believe the charge to be a gratuity," it does not insulate Defendants from liability if a reasonable customer would nonetheless believe otherwise based on the totality of the circumstances. (March 11, 2010 NYDOL Letter 2.) The Letter outlines a number of steps banquet businesses should consider to avoid liability, such as increasing the font size and modifying the placement of the disclaimer, changing the name of the fee from "service charge" to a less ambiguous title, clearly explaining the purpose of the fee and its method of calculation, providing directions on how to tip the service staff if the service charge will not be distributed to them, and adding a separate line on the contract labeled "gratuity" to allow the client to add a tip when the contract is signed. (March 11, 2010 NYDOL Letter 2.) The Letter explains that this list is illustrative rather

than exhaustive. (March 11, 2010 NYDOL Letter 2.)

While we are mindful that the March 11, 2010 NYDOL Letter suggests measures that may be prophylactic in nature and not strictly required by the reasonable customer standard in every instance, the list of the many factors to be considered indicates that a rational jury could find for Plaintiffs on those events held under Form Contract Three. This contract does not print the gratuity disclaimer in bold or highlighted font, refers to the fee as a "service charge," does not explain whether any monies are distributed to the staff in lieu of a "gratuity," and does not mention whether additional tips are permitted or expected. (Form Contract Three, at 2, 4; *see* March 11, 2010 NYDOL Letter 2.)

Our conclusion that summary judgment is inappropriate for events held under Form Contracts One and Three is reinforced by Defendants' e-mail representations to clients regarding the service charge. Customers would sometimes refer to the service charge as a gratuity, and Pier Sixty sales managers would not correct them to avoid confusing them. (Pl's.Mem.Opp.Summ. J. 12–15.) When customers inquired about the service charge or tipping policies, sales managers would tell them that servers' tips were "covered by" or "included in" the service charge, or that the service charge would go "directly" to servers, or that the service charge "compensates the individual serving the customer." (Pl's.Mem.Opp.Summ. J. 12–15.) Such representations, combined with the paucity of information about the service charge in Form Contracts One and Three and Defendants' well-advertised no-tipping policy, could be viewed by a reasonable jury to have led reasonable patrons to believe that the entire service charge was a gratuity.[6]

■ However, even considering the many factors suggested by the March 11, 2010 NYDOL Letter, no reasonable jury could find that a reasonable customer would believe that the service charge was a gratuity under Form Contract Two. This contract clearly delineates the "service charge" from the "gratuity" in the large print body of the contract, and never refers to the service charge without also referring to the gratuity as a separate, distinct charge, subject to different tax treatment. The difference between the two and their methods of calculation and distribution is clearly explained in the "terms and conditions" section of the contract. (Form Contract Two, at 5 ("12.25% ... is fully distributed to servers .... 9.75% ... is not a gratuity and serves to offset ancillary expenses associated with the event.").) Nor was there a need for a separate line where customers could add a gratuity because the gratuity was clearly and separately labeled. The factors listed in the March 11, 2010 NYDOL Letter support the conclusion that no reasonable customer could believe that the "service charge" was a gratuity upon examination of this contract.[7] (*See* March 11, 2010 NYDOL Letter.)

Accordingly, Defendants' motion for summary judgment is granted as to those events

---

6. Defendants protest that the e-mails constitute inadmissible hearsay, but their consideration is appropriate. The statements of Pier Sixty employees are admissible for their effect on the listener. "It is well established ... that statements offered for their effect on the listener are non-hearsay.'" *U.S. v. Gotti,* 457 F.Supp.2d 395, 397 (S.D.N.Y.2006) (*quoting Smith v. City of New York,* 388 F.Supp.2d 179, 182 n. 2 (S.D.N.Y. 2005)); *United States v. Garcia,* 900 F.2d 571, 576 (2d Cir.1990) (same). Clients' e-mail statements are properly offered to provide context for the admissible statements of Pier Sixty employees. *U.S. v. Dupre,* 462 F.3d 131, 137 (2d Cir. 2006). Nor do client statements in the form of questions constitute hearsay. *Quartararo v. Hanslmaier,* 186 F.3d 91, 98 (2d Cir.1999) ("An inquiry ... cannot be a hearsay statement."). Because consideration of the e-mails for these

purposes alone is sufficient to decide the instant motion, we do not reach the question of whether they may be admitted for the truth of the matter asserted.

7. During the period Form Contract Two was in use, sales managers continued to tell customers that the tip for all other staff besides the banquet manager was "covered by the service charge." (*See, e.g.,* E-mails, PSL 8433.) However, Form Contract Two so explicitly differentiates the service charge from the gratuity in large font that ambiguous sales representations would not confuse a reasonable customer into believing that the 9.75% "service charge" was a second gratuity, added to the bill in addition to the 12.25% "gratuity" listed on the contract two lines below. (Form Contract 2, at 2.)

from approximately April 2008 to August 2008 for which Defendants used Form Contract Two. Defendants' motion is denied as to the remaining dates. Plaintiffs brought a separate NYLL claim regarding unpaid cash gratuities provided to banquet managers, but did not oppose summary judgment on this claim; accordingly Defendants are granted summary judgment on the cash gratuities claim.

### d. FLSA Overtime Claim

▮ Plaintiffs claim Defendants failed to pay them overtime compensation pursuant to the FLSA, 29 U.S.C. § 207(a), but Defendants argue that Plaintiffs are exempt from the FLSA's overtime requirements under the retail or service establishment exemption. *See* 29 U.S.C. 207(i). The employer bears the burden of establishing entitlement to the exemption, and courts construe the exemption narrowly against the employer. *Lee v. Ethan Allen Retail, Inc.,* 651 F.Supp.2d 1361, 1365 (N.D.Ga.2009) (*citing Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir.2001)).

To qualify for the retail or service establishment exemption, over half of an employee's compensation must be from commissions on goods or services.[8] 29 U.S.C. 207(i). In computing the amount of earnings attributable to commissions, "all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee." *Id.* The parties dispute whether Defendants' commission plan is "bona fide." [9]

▮ Congress did not define the meaning of "bona fide commission rate." *Herman v. Suwannee Swifty Stores, Inc.,* 19 F.Supp.2d 1365, 1369 (M.D.Ga.1998). Courts have interpreted this phrase to require an inquiry into "whether the employer set the commission rate in good faith." *Erichs v. Venator Grp., Inc.,* 128 F.Supp.2d 1255, 1259 (N.D.Cal.2001). While "the case law on the meaning of 'commission' under the retail commission exception is sparse," *Parker v. NutriSystem, Inc.,* No. 08 Civ. 1508, 2009 WL 2358623, at *4 (E.D.Pa. July 30, 2009), the United States Department of Labor has provided some guideposts for analyzing compensation plans in which "the employee will be paid [a guaranteed] stipulated sum, or the commission earnings allocable to the same period, whichever is the greater amount." 29 C.F.R. § 779.416(a). Such plans must be scrutinized to determine if the guarantee "actually functions as an integral part of a true commission basis of payment" or instead "is actually paid as a salary." 29 C.F.R. § 779.416.

The regulations provide two non-exclusive examples of commission plus guarantee plans that would not qualify as bona fide. First, a commission plan is not bona fide where "the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee)." *Id.* Second, a commission plan is not bona fide where "the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment … can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota." *Id.* These examples indicate that where the commission plan is designed such that the employee will almost always receive the guarantee and nothing or little more, the plan is not bona fide. Because Defendants' compensation plan calculates all commissions using a fixed percentage rate, only the first

---

8. It is undisputed that Plaintiffs meet the other prerequisites for the retail or service establishment exemption: Pier Sixty is a "retail or service establishment," and Plaintiffs' "regular rate of pay" exceeds one and one-half times the applicable minimum hourly rate under the FLSA. 29 U.S.C. § 207(i).

9. Specifically, Defendants maintain that all server earnings in excess of the "standard hourly rate" of $3.75–5.63, the vast majority of servers' total average hourly earnings of $23–26, constitute bona fide commissions. Plaintiffs argue that only the relatively small portion of servers' earnings exceeding the $19–20 guaranteed hourly wage can be deemed a bona fide commission, rendering Plaintiffs ineligible for the exemption.

example of a non-bona fide plan is directly relevant here.

From the record before the Court, it does not appear that Plaintiffs Russo, Ledin, and Martinez "never" or "seldom" received more than the guaranteed minimum in a representative period of one month.[10] For the limited number of events for which Plaintiffs produced paystubs, Martinez received the part-time guaranteed hourly rate for thirteen of fifty seven events, Russo for eleven of eighteen events, and Ledin for nineteen of forty-four events. (Schulman Dec. Opp. Summ. J. Ex. 24.) None of these ratios indicate that Plaintiffs "never" or "seldom" received more than the guaranteed minimum hourly wage; rather, it appears that Plaintiffs regularly exceeded the guarantee. *Cf. Herman*, 19 F.Supp.2d at 1372 (finding that exceeding the guarantee only once a year was "clearly not" bona fide, but refusing to grant employees summary judgment on under-developed factual record when some employees exceeded the guarantee only two to four times a year).

■ Nevertheless, the present record is too incomplete to warrant summary judgment at this juncture. Paystubs were only submitted for three of six Plaintiffs. Those paystubs represent a tiny fraction of the hundreds of events these Plaintiffs have worked at Pier Sixty.[11] The paystubs are also between one to five years old, despite the fact that Plaintiffs are currently employed.

(Giordano Aff. Opp. Certification ¶ 19); *see* 29 C.F.R. § 779.417(b) ("[The representative period for testing exemption] must be as recent a period . . . as can practicably be used."). Because the employer bears the ultimate burden of establishing entitlement to the exemption, *Lee*, 651 F.Supp.2d at 1365, and all inferences are to be drawn in favor of the non-moving party on a motion for summary judgment, these gaps in the factual record form a genuine issue of material fact.[12] *See Erichs*, 128 F.Supp.2d at 1259 (denying summary judgment due to factual question about operation of commission rate); *Herman*, 19 F.Supp.2d at 1372 (denying summary judgment when evaluating bona fides of commission plan by looking to how often employees exceeded the guaranteed payment).

### e. Individual Liability of Defendant James Kirsch

James Kirsch and several other individuals own Pier Sixty. Douglas Giordano is Pier Sixty's general manager and oversees all of Pier Sixty's operations. Giordano reports to Kirsch, but often only speaks to him once a month. Jeff Stillwell is the director of Banquet services and reports to Giordano. Stillwell assigns a banquet manager to each event, who is responsible for running the event.

**10.** *See* 29 C.F.R. § 779.417(a) ("Whether compensation representing commissions constitutes most of an employee's pay . . . must be determined by testing the employee's compensation for a 'representative period' of not less than 1 month.").

**11.** Pier Sixty's General Manager stated in January 2010 that Martinez had worked 347 events, Russo had worked 816 events, and Ledin had worked 642 events. (Giordano Aff. Opp. Certification ¶ 19.)

**12.** Plaintiffs rely on three cases that found only amounts above a guaranteed minimum to be bona fide commissions, but those cases are distinguishable. In *Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.*, 246 F.Supp.2d 886, 898 (S.D.Ohio 2003), employees received the flat guaranteed payment in addition to commissions on all sales when they exceeded the minimum sales threshold, rendering the guarantee a standard salary not tied to commis-

sions. In *Donovan v. Highway Oil, Inc.*, No. 81 Civ. 4245, 1986 WL 11266 (D.Kan. July 18, 1986), the employer greatly reduced the commission percentage rate for sales over a sufficiently high minimum threshold, so that employees tended to earn only the guaranteed minimum or little more. *See* 29 C.F.R. § 779.416 (such a plan is not bona fide). *Keyes v. Car-X Auto Services*, No. 07 Civ. 503(HJW)(TSH), 2009 WL 4110144, at *2 (S.D.Ohio Sept. 30, 2009) is distinguishable because the plaintiff alleged that his commission percentage rate fluctuated randomly.

Moreover, the bare fact that a non-recoverable guaranteed minimum was paid is not determinative of a commission plan's bona fides. The FLSA and its implementing regulations clearly permit guaranteed minimum payments so long as the commission plan as a whole is bona fide. *See* 29 C.F.R. § 779.416; *Erichs*, 128 F.Supp.2d at 1260 n. 6 ("The presence of downside protection, of course, is not synonymous with a sham commission rate plan.").

Plaintiffs named Kirsch as an individual defendant, and Kirsch now moves for summary judgment on the grounds that he is not Plaintiffs' employer. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).[13] The FLSA was written in the "broadest possible terms," and it is to be construed broadly because it would run "counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker ... to escape compliance with the Act." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984); *see also Frankel v. Bally, Inc.*, 987 F.2d 86, 89 (2d Cir.1993) (noting "the expansive nature of the FLSA's definitional scope").

In determining whether an individual is an employer, "[t]he overarching concern is whether the alleged employer possessed the power to control the workers in question...." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir.1999). To answer this question, courts consider the four factors of the "economic reality test:" "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (citation omitted). These factors are not exclusive, nor is any one factor dispositive. *Herman*, 172 F.3d at 140.

A corporate officer or director may be found to be an employer when "the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions." *Ling Nan Zheng v. Liberty Apparel Co., Inc.*, 556 F.Supp.2d 284, 298 (S.D.N.Y.2008) (citation omitted). Employer status "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." *Herman*, 172 F.3d at 140 (citation, internal quotation marks, and alteration omitted).

The Court of Appeals for the Second Circuit has noted that this determination is rarely suitable for summary judgment. *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 143–44 (2d Cir.2008) (due to "fact-intensive character" of economic reality test, Court of Appeals for the Second Circuit "rarely" has occasion to review grants of summary judgment); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 76 (2d Cir.2003) (same). Under the economic reality test, "[o]nly ... the ultimate decision as to whether a party is an employer ... is a legal conclusion." *Id.* Both the "historical findings of fact that underlie each of the relevant factors" and the "findings as to the existence and degree of each factor" are questions of fact. *Zheng*, 355 F.3d at 76. "In order to grant summary judgment for defendants, the District Court would have to conclude that, even where both the historical facts and the relevant factors are interpreted in the light most favorable to plaintiffs, defendants are still entitled to judgment as a matter of law." *Id.* Given the FLSA's expansive definition of "employer," it is unsurprising that Defendants have not pointed to a single case in which a putative employer was granted summary judgment under the economic reality test.

While it is undisputed that Kirsch did not maintain employment records, Kirsch testified that he was involved in Pier Sixty's decision to impose a service charge, helped design Pier Sixty's "service policies," played a "leading role" in hiring Pier Sixty's managerial staff, and arranged the transfer of two employees from a related entity to Pier Sixty. (*See* Pl's. Mem. Opp. Summ. J. 24–25.) Defendants protest that this activity occurred during Pier Sixty's start-up phase in

---

**13.** "[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Jiao v. Shi Ya Chen*, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *9 n. 12 (S.D.N.Y. Mar.30, 2007).

the late 1990s, well outside the limitations period. However, the Court of Appeals for the Second Circuit rejected this argument in *Herman* because past exercises of authority indicate the continued existence of that authority. 172 F.3d at 140. Moreover, the hiring of managerial staff has been deemed to indicate functional control even absent a putative employer's involvement in hiring the plaintiff employees. *Id.*

Accordingly, viewed in the light most favorable to Plaintiffs, the first and third factors point in favor of finding Kirsch to be an employer, and the second factor, ability to control and supervise employees, is ambiguous. This showing potentially indicates Kirsch's functional control over Plaintiffs, and therefore summary judgment is inappropriate. *Zheng*, 355 F.3d at 76–77.

## III. Motion for Certification of Class and Collective Actions

### a. FLSA Collective Action

█ Courts in this Circuit follow a two-stage certification process for FLSA collective actions. *Morales v. Plantworks, Inc.,* No. 05 Civ. 2349(DC), 2006 WL 278154, at *1 (S.D.N.Y. Feb.2, 2006) (*citing Masson v. Ecolab, Inc.,* No. 04 Civ. 4488(MBM), 2005 WL 2000133, at *13 (S.D.N.Y. Aug.17, 2005)). The first stage, conditional certification, requires only a "modest factual showing" based on the "pleadings and affidavits" that the putative class members were "victims of a common policy or plan that violated the law." *Morales,* 2006 WL 278154, at *2 (*quoting Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997)); *see also Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y. 1995) ("[P]laintiffs need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'") (citation omitted). "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA." *Morales,* 2006 WL 278154, at *2 (*citing Hoffmann,* 982 F.Supp. at 262). If the plaintiff can make this initial showing, the court will conditional-

ly certify the collective action and permit notice to be sent to putative class members. The employer can then move to decertify at the second stage "if discovery reveals that the claimants are not similarly situated." *Morales,* 2006 WL 278154, at *2.

Defendants have not raised any argument against conditional certification. As Plaintiffs have made the required factual showing, the Court grants Plaintiffs' motion for conditional certification of the FLSA collective action.

### b. NYLL Class Action

█ In order to obtain class certification, a plaintiff must satisfy the four prerequisites of Rule 23(a) and one of the prerequisites of Rule 23(b). The Court must undertake a "rigorous analysis" to determine if Plaintiffs have proven each prerequisite by a "preponderance of the evidence." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital, Inc.,* 546 F.3d 196, 203 (2d Cir.2008).

█ Rule 23(a) sets out four requirements for class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED R. CIV. P. 23(a). Defendants raise no arguments as to (1) numerosity, which has been established because the class consists of at least 100 members. *See Consol Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (40 or more putative class members satisfies numerosity).[14]

█ "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3)." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.

---

14. The class is also identifiable and ascertainable, as Defendants' records make it "administratively feasible for a court to determine whether a particular individual is a member of the class." *In re Fosamax Prods. Liab. Litig.,* 248 F.R.D. 389, 395 (S.D.N.Y.2008) (citation omitted).

1997). "The commonality requirement [is] satisfied if the class shares even one common question of law or fact, and factual differences in the claims of the class do not preclude a finding of commonality." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y.2006) (*quoting In re NTL Sec. Litig.*, 02 Civ. 3013, 2006 WL 330113, at *6 (S.D.N.Y. Feb.14, 2006)). Commonality is clearly satisfied in this instance; class members assert the same legal claim based on *World Yacht* against a service charge policy that was in all material respects nearly identical for each Plaintiff and for each event. Even granting that there were slight variations in the way the service charge was presented to clients, the service charge was collected and distributed in an essentially uniform manner for each event, providing a common issue of fact. Defendants question the uniformity of the Plaintiffs' legal theories by pointing out variations between each Plaintiff's lay understanding of her legal claim in deposition testimony. However, Plaintiffs are entitled to rely "on their attorneys to articulate the … legal theories that apply to their claims." *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001).

■■■ "[T]ypicality is satisfied 'when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993). A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' "injuries derive from a unitary course of conduct by a single system." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997). "A lack of typicality may be found in cases where the named plaintiff 'was not harmed by the [conduct] he alleges to have injured the class.'" *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y.2009) (*citing Newman v. RCN Telecom Servs.,*

*Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y.2006)). But typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). Here, each class member's claim "arises from the same course of events," produced by a "single system," namely Defendants' system for collecting, explaining, representing, and distributing the service charge. *Robidoux*, 987 F.2d at 936–37; *Marisol A.*, 126 F.3d at 377.

■■■ To determine whether the named plaintiff will adequately represent the class, courts ask whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). "The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008). Defendants do not seriously contest adequacy;[15] the Court is satisfied that Plaintiffs will adequately represent the class because their interests are closely aligned with all putative class members. Moreover, the Court is satisfied that Plaintiffs' counsel are competent and qualified to prosecute this action; counsel have ample experience in litigating large wage and hour class actions. Counsel's experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing

15. In passing, Defendants question whether Plaintiffs can adequately represent the class, having waived the class's right to liquidated damages under New York state law. However, we agree with the courts that have rejected this argument. *See, e.g., Andrade v. JP Morgan Chase Bank, N.A.*, No. 08 Civ. 3703(RRM)(RLM), 2009 WL 2899874, at *2–3 (E.D.N.Y. Sept. 4, 2009)

("Plaintiff's waiver of liquidated damages does not render him an inadequate class representative.… [A] waiver of liquidated damages—far from being a hindrance to adequate representation—is a *prerequisite* to the bringing of a class action under the applicable provisions of New York Labor Law.") (emphasis in original) (citation omitted).

the class also satisfy the Rule 23(g) requirements for appointment as class counsel. FED R. CIV. P. 23(g); *see also, e.g., Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y.2004).

■■■ Having satisfied the Rule 23(a) prerequisites, the Court must determine whether "the questions of law or fact common to class members predominate over any questions affecting only individual members." FED.R.CIV.P. 23(b)(3). The predominance analysis is " 'more demanding' than the commonality inquiry under Rule 23(a), because it requires not only that there be disputed issues that can be resolved through 'generalized proof,' but also that 'these particular issues are more substantial than the issues subject only to individualized proof.' " *Damassia*, 250 F.R.D. at 159 (*citing Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002)).

■■■ Under the *World Yacht* standard, liability will be determined on an event-by-event basis. The relevant question is whether a reasonable client booking the event would understand the portion of the service charge not paid to servers to be a gratuity from the totality of the circumstances. *See Krebs*, 2009 WL 440903, at *7. Accordingly, for each event, liability *vel non* will be established for the entire class of servers that worked that event based on generalized proof. Because a trial on liability for any given event would look essentially identical whether it was prosecuted individually or on a class basis, predominance is satisfied for those events at which the lead Plaintiffs worked. *See Krebs*, 2009 WL 440903, at *7 ("[Under *World Yacht*, the] inquiry is not predicated upon factors unique to Plaintiff or other waitstaff members but factors unique to each event which would then be applied to [to resolve liability for all] the waitstaffers who worked that event.... There are no individual questions presented that are unique to any particular special event waitstaff member. Even as to damages, it would seem that, if a gratuity or purported gratuity was collected and should have been paid over, the damages would be shared *pro rata* by all of the staff members who worked the event in question.").

The more difficult question is whether predominance is met for those events during the relevant time period at which the lead Plaintiffs did not work. Viewed in the abstract, each event would have to be scrutinized individually to determine what a reasonable patron would have believed about the service charge from the totality of the circumstances. But the facts of this case indicate that a much more generalized inquiry will be possible. First, Plaintiff used only two form contracts (for those events that have survived summary judgment), and Defendants have represented that for most events, nothing was said about the service charge in addition to what was contained in the contract. (Def.'s 56.1 ¶ 25) ("Pier Sixty rarely, if ever, has to provide [clients] with an explanation of what their charges represent."); *see also Krebs*, 2009 WL 440903, at *9 ("[A]t least as to events for which surcharges were imposed and nothing explicit was said to the patrons, a finding as to what a 'reasonable patron' may have perceived ... may well have relevance as to all such events, whether Plaintiff worked on such events or not."). Factual issues surrounding the common form contract predominate over event-specific issues even for those events for which some minimal additional explanation of the service charge was provided. Moreover, the "reasonable patron" test is objective rather than subjective, obviating the need to closely examine each individual customer's "frailties or idiosyncrasies." *Yarborough v. Alvarado*, 541 U.S. 652, 663, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Accordingly, common issues predominate over individual issues for these events as well.

■■■ As to Rule 23(b)(3)'s requirement that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," FED.R.CIV.P. 23(b)(3), "[c]ourts in this Circuit ... have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *8–9 (S.D.N.Y. Jan. 12, 2007) (collecting cases). Defendants cite to *Alix v. Wal-Mart Stores, Inc.*, 16 Misc.3d 844, 838

N.Y.S.2d 885 (Sup.2007), *aff'd* 57 A.D.3d 1044, 868 N.Y.S.2d 372 (N.Y.App.Div.2008), which held that individual administrative proceedings before the New York Department of Labor were a superior method of adjudicating the class's claims for time-sheet manipulation. In distinguishing *Alix,* the *Krebs* court reasoned that because liability under *World Yacht* would be resolved on an event-by-event basis, individual administrative claims were a far less efficient means of resolving the class's claims. *Krebs,* 2009 WL 440903, at * 18. This event-by-event determination distinguishes the claims here and in *Krebs* from the highly individualized determinations necessary in *Alix. Id.* ("[*In Alix,* there] would have to be a fact-specific inquiry into each individual worker's circumstances and the accuracy of the time records reflecting the hours worked of each worker."). Accordingly, a class action is the superior means of adjudication.

As Plaintiffs have satisfied the Rule 23 prerequisites, the Court certifies the class action. The Court grants Defendants' request to allow the parties to confer on the contents of class notice at a date in the near future.

The Court grants Plaintiffs' request to compel disclosure of putative class members' social security and telephone numbers. *See Whitehorn v. Wolfgang's Steakhouse, Inc.,* No. 09 Civ. 1148(LBS), 2010 WL 2362981, at *3 (S.D.N.Y. Jun. 14, 2010) (ordering disclosure of personal contact information because plaintiffs' "need and due process right to conduct discovery outweigh[s] any privacy concerns of the putative plaintiffs.") (*quoting Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 554 (N.D.Ill.2008)) (internal quotation marks omitted).

## IV. Conclusion

For the foregoing reasons, the Court rules as follows: (1) Defendants' motion for summary judgment is granted for those events in 2008 for which Form Contract Two was used; (2) Plaintiffs waived their NYLL claim for unpaid cash gratuities; (2) Defendants' motion for summary judgment is denied in all other respects; (4) Plaintiffs' motion for con-

ditional certification of a FLSA collective action is granted; (5) Plaintiffs' motion for certification of a class action for the remaining NYLL claims is granted; (6) Plaintiffs' counsel is appointed class counsel; and (7) Plaintiffs' motion to compel disclosure of putative class members' identifying information is granted.

The parties are to confer regarding the contents of class notice as soon as practicable; within twenty (20) days of this order, the parties are to inform the court by joint letter whether briefing on the issue of notice will be necessary. In that letter, the parties are to provide a proposed schedule of further proceedings in this matter.

### *MEMORANDUM & ORDER*

Defendants have moved for this Court to certify its July 26, 2010 Order pursuant to 28 U.S.C. § 1292(b) for ultimate certification to the New York Court of Appeals the question whether the decision in *Samiento v. World Yacht Inc.,* 10 N.Y.3d 70, 854 N.Y.S.2d 83, 883 N.E.2d 990 (2008) should be applied retroactively.

Section 28 U.S.C. § 1292(b) provides that such an order may be entered when the court is of the opinion that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." This Court is not of such opinion in view of the present status of this case but agrees with plaintiffs that an intermediate appeal would delay, not expedite, its ultimate resolution. Motion denied.

SO ORDERED.

### MEMORANDUM AND ORDER

Defendants' further motion for partial reconsideration is denied.

▮ In response to the motion we have reviewed the merits of our denial of dismissal of claims based on Form Contract Three. We conclude that the ruling was correct regardless of the status of the March 11, 2010 NYDOL Opinion Letter. As we wrote at p. 11 "We rely[1] on the March, 2010 NYDOL

---

1. Writing today we would strike "rely on" and substitute "cite".

**340**

Letter because it is both reasonable and derived from an understanding of the 'underlying operational practices of the New York banquet industry.'"

In short having fully considered Defendants' arguments, we are satisfied that formal reconsideration would yield no different determination but would delay implementation of this case which is well underway.

Motion denied.

So Ordered.